# Donahoo Horse & Mule Co. *v.* Durick.

## *Detinue.*

(Decided May 17, 1915. Rehearing denied June 30, 1915.
69 South. 545.)

1. *Mortgages; Record; Bona Fide Purchaser.*—Under Section 3386, Code 1907, one who parts with something of value for the thing purchased, although he does not pay or become irrevocably bound to pay the whole agreed price before notice of the lien, is a bona fide purchaser for value, and to the extent that he has parted with something of value, incurred some new obligation, relinquished some security or done some act on the faith of the purchase which cannot be retracted, and which would leave him in a worse position if his purchase should be set aside, is entitled to protection.

2. *Statutes; Re-enactment; Judicial Construction.*—The re-enactment of a statutory provision without change is in effect the enactment of the judicial construction which had been put upon it.

3. *Detinue; Wrongful Detention.*—The gist of the action of detinue is wrongful detention, and under Section 3788, Code 1907, a plaintiff in detinue must be entitled to the immediate possession of the cattle at the time he brings his action.

4. *Same; Bona Fide Purchaser; Protection.*—Under the provisions of Section 3788, et seq., a plaintiff in detinue asserting an outstanding claim to or lien on certain property is not entitled to immediate possession as against a bona fide purchaser who has paid part of the purchase price before notice of such outstanding claim or lien, as the detinue statutes do not provide for an ascertainment and allowance of protection pro tanto to the purchaser, and if the powers of equity are to be invoked to apportion such protection, plaintiff must become the actor.

5. *Mortgages; Transfer of a Mortgagor; Purchaser.*—Under Section 3386, Code 1907, a purchaser who has parted with value before notice is entitled to the protection of a bona fide purchaser for value without notice; but an innocent purchaser on credit, who has given only a non-negotiable promise to pay, and who before payment has notice of facts sufficient to put him on inquiry, is not entitled to the protection of a bona fide purchaser.

6. *Same.*—In the absence of any circumstances reflecting upon the lawfulness of the possession of a horse by a mortgagor, a purchaser of the horse has the right then to rely and act upon the prima facie presumption of ownership resulting from such possession.

7. *Pleading; Demurrer; Admission.*—Where demurrer is overruled to a plea, the averments of the plea are established as bases for issues of fact upon or under which legal evidence is adducible.

8. *Mortgages; Detinue; Bona Fide Purchase.*—Where the action was in detinue by the mortgagee for a horse, a plea asserting that the defendant gave the mortgagor a horse in exchange for the one sued for, and took possession thereof, and became the bona fide owner thereof, and afterwards paid the balance of the purchase price, and that he had no notice of plaintiff's claim thereto, and knew of no facts sufficient to put him on inquiry, sufficiently negatived defendant's notice of the existence of plaintiff's mortgage at the time he parted with value in his dealings with the mortgagor.

9. *Same; Presumption; Burden of Proof.*—Where one claims to be a bona fide purchaser for value, the burden rests on him to make satisfactory proof of the purchase and payment; when he does this the burden shifts, and the party suing must show that the purchaser, before payment, had actual or constructive notice of the mortgage, or facts sufficient to put him on inquiry, which if followed up, would have shown the equity or incumbrance.

10. *Appeal and Error; Harmless Error.*—Where defendant was entitled to the general affirmative charge, any errors otherwise intervening, not affecting the result, were harmless to plaintiff.

APPEAL from Bessemer City Court.

Heard before J. C. B. GWIN.

Detinue by the Donahoo Horse & Mule Company against Steve Durick. Judgment for defendant, and

plaintiff appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

The facts sufficiently appear. Plea 6 is as follows:

Defendant says that he bought or traded for the horse, the subject-matter of the suit, on the 2nd day of July, 1913, from J. L. Gray, who was then in the city of Bessemer, and gave said Gray, in exchange for said horse, a horse then belonging to defendant, and reasonably worth the sum of, to wit $65, and in addition thereto, on said date, he gave said Gray merchandise to the value of $10, and agreed to pay at a later date to said Gray the further sum of $95. Defendant avers that he then and there took possession of the horse about which this suit is brought, and became the bona fide owner thereof, and that thereafter, on July 4, 1914, defendant avers that he paid said Gray the remainder of said purchase price, that is, $95, and that Zask M. Gray, the brother of J. L. Gray, knew of and assented to the sale of said horse to defendant by J. L. Gray. Defendant avers that he had no notice of plaintiff's claim to said horse, and knew of no facts sufficient to put him on inquiry that, if followed up would have disclosed plaintiff's claim, previous to and down to the time of paying the money and other things of value for said horse.

ESTES, JONES & WELCH, for appellant.

L. L. LOCKWOOD and T. T. HUEY, for appellee.

McCLELLAN, J.—(1-2) The action is detinue to recover a horse. The plaintiff (appellant) is the mortgagee; and the defendant (appellee) is the purchaser of the animal from the mortgagor. The defense successfully asserted below was that the defendant was a bona fide purchaser for value and without notice

of the plaintiff's existing mortgage on the animal. The mortgage was executed June 10, 1913. On July 3, 1913, the mortgage was filed for record. On July 2, 1913, defendant and the mortgagor made this trade: Defendant agreed to give the mortgagor, for the horse in suit, $10 in value in merchandise, a horse then owned and in the possession of the defendant, and to later pay the mortgagor $95 in money. This trade was, on that day, effected to this extent: The mortgagor delivered the horse in suit to the defendant, and the defendant delivered the merchandise and the other horse to the mortgagor. On July 4, 1913, the very next day after the mortgage was filed for record, and after constructive notice thereof had become operative upon the defendant in virtue of the filing of the mortgage for record, the defendant paid the mortgagor the $95, as stipulated in the agreement between them. On the facts stated, the point was taken below, and is stressed here, that one who does not pay in full the purchase price of personal property at the time of the purchase or before notice of the outstanding right or claim is brought home, or is imputed under the registration statutes to him, cannot invoke the protection the law accords to a bona fide purchaser for value and without notice.

So far as presently important, Code, § 3386, provides: "Conveyances of personal property to secure debts, or to secure indemnity, are inoperative against creditors and purchasers without notice until recorded. * * *"

In the decision of *Dudley v. Abner,* 52 Ala. 582, this court construed the above section (then section 1561 of the Code of 1867) in respect of the term "purchaser": the court saying:

"And he is a purchaser for a valuable consideration who parts with something of value for the thing purchased."

This case was decided in 1875. The statute in question has been thrice re-enacted since the decision in *Dudley v. Abner*. Its readoption comprehended the construction put upon it by this court in that case. This construction does not, as is apparent, make a condition to one's being a bona fide purchaser that he shall have paid, or shall have become irrevocably bound to pay, the whole purchase price he agreed to pay before notice of the outstanding claim or lien. The purpose of such statutes is, as said by Jones on Chattel Mortgages, at section 313, "to protect those who have acquired rights under circumstances which would render them liable to be defrauded unless so protected." This object confirms the correctness of the announcement made in *Dudley v. Abner*, as before quoted. This conclusion does not conflict with the further rule that the protection accorded such a purchaser is limited, in degree, when the jurisdiction of a proper forum is invoked to ascertain and give effect to the proportionate degree of protection, to the extent he has parted, "with something of value," incurred "some new obligation," relinquished "some security," or has done "some act on the faith of the purchase which cannot be retracted, and which would leave the buyer in a worse position if his purchase should be set aside; a mere agreement by the buyer, which he can avoid in case his title proves defective, being insufficient."—Cyc. pp. 351, 352.

(3-4) The action is detinue. It is of statutory creation.—Code, § 3788 et seq. The statutes creative of the system do not provide for an ascertainment and effectuation of the proportionate protection of a purchas-

[Donahoo Horse & Mule Co. v. Durick.]

er, who in good faith has parted with value, but not
all of the purchase price, before notice of the outstand-
ing claim or lien of another to the property.   The Su-
preme Court of Missouri, in *Dougherty v. Cooper*, 77
Mo. 528, 534, 546, found warrant or authority in the
statutes of that state for such method of proportionate
protection of a purchaser, when the action was one of
statutory replevin.   We cannot take that liberty with
our statutory system creative of the action of detinue.
Under it, a plaintiff must be entitled to the immediate
possession of the chattel at the time he commences his
suit; the gist of the action being the wrongful deten-
tion of the chattel.—*Jessie French Co. v. Bradley*,
138 Ala. 179, 35 South. 44.   Is he (plaintiff) so
entitled when the buyer (from the mortgagor) has with-
out notice and in good faith, and in reliance upon and
in compliance with the agreement with the seller (mort-
gagor), parted with values—when he has assumed, un-
der such circumstances, a position that to set aside
his purchase would result in defrauding him, who, as
stated, was innocent in his dealing with the selling mort-
gagor? Our answer is that, in view of the definition of
"purchaser," as employed in the statute (section 3386),
established in *Dudley v. Abner, supra*, and of the ob-
ject of the statute (section 3386), and of the conceded
right of the innocent buyer to protection pro tanto,
the asserter of the outstanding claim to or lien on the
property is not, in an action of detinue, entitled to the
immediate possession of the chattel; for to affirm other-
wise would allow the buyer to be defrauded when, to
the extent of his payment, he is due to be protected.
According to the practice prevailing in the state of
Michigan, the verdict or the judgment may be so or-
dered or contrived as to protect the proportionate right

of the buyer.—*O'Neill v. Thompson,* 152 Mich 396, 398,
399, 116 N. W. 399; *Moore v. Vrooman,* 32 Mich 526.
That practice cannot, as before indicated, be adopted
here. The statutes governing detinue do not contem-
plate it.

If the powers of a court of equity are to be invoked
to apportion the proportionate protection to which the
purchaser is entitled, the plaintiff (appellant) must
become the actor. To impose that obligation on the pur-
chaser (appellee) would be equivalent to affirming that
he was not a purchaser, in contradiction of the defini-
tion of that term, as employed in that statute, long
since established by *Dudley v. Abner.* Neither the de-
cision in *Hoyt v. Turner,* 84 Ala. 526, 4 South. 658,
nor that in *First Nat. Bank v. Sproull,* 105 Ala. 275,
16 South. 879, are authority in opposition to the ruling
here made. In the former case, the defendants not only
had not paid or parted with anything of value, but they
had not assumed any new, irrevocable obligation in the
premises. The statement as to payment of the pur-
chase money, on page 526 of 84 Ala., and page 660
of 4 South., must be read and interpreted in the light
of the subject and circumstances inviting the court's
expression. The latter case (105 Ala. 275, 16 South.
879) was an action for money had and received. It
was brought by the bank against Sproull. It sought to
recover of Sproull "one-half the amount received by the
defendant from certain property sold to him, on which
the plaintiff had a lien as assignee of a certain mort-
gage and notes secured thereby." The property involved
mere elements of an already laid railway, viz., rails,
spikes, plates, bolts, etc. The railway was originally
owned by Laney and Jackson, who in 1890 conveyed
to Line and Wilson an undivided one-half (one-fourth

to each) interest in the railway and other property; Line and Wilson giving their notes secured by a mortgage on the elements of the railway, etc., to Laney and Jackson for the purchase price. The deed from, and the notes and the mortgage to, Laney and Jackson were seasonably recorded, effecting notice under the registration statutes. Before maturity of these notes, Laney and Jackson trasferred the notes to the plaintiff, the bank, and at a later date, in 1891, transferred the mortgage, securing the notes, to the bank, but without assignment. In 1893 the defendant Sproull "purchased the rails, spikes, plates, bolts, etc., belonging to said railroad," from Laney as the president of the Birmingham, Laney & Piedmont Railroad Company, which was then in possession of said railroad. During that year the rails, etc., of said railroad were taken up and shipped away. Later the defendant Sproull sold the rails, etc., to Smith and Kilby for $3,268.20, according to the recitals of the bill of sale. The defendant asserted that the purchase price he was to pay Laney as president of the railroad company was $4,752.65. The evidence on the subject of what Sproull paid to Laney, as president, was that he (Sproull) had absorbed $700 of the purchase price to Laney by accepting it as payment by Laney of an account due from Laney to defendant, that Sproull had indorsed a $500 note from Laney to the bank, and that Sproull had given Laney a four months note for $2,000. The court found $3,268.20 to be the amount for which Sproull sold the rails, etc., and to be the proper basis of Sproull's liability to the bank, which, as appears, was entitled to or had an efficacious half interest in the property, of which fact the reasonable registration of the notes and mortgage effected to impute notice to Sproull. It is manifest that the notice imputed to

Sproull through the registration of the mortgage, afterwards assigned to the bank, was efficient to prevent him from being a bona fide purchaser without notice, and so regardless of whether he paid Laney anything or not. So that decision cannot be accepted as authority to induce a conclusion opposed to that required by adherence to the quoted doctrine of *Dudley v. Abner, supra.*

(5)　　The statute renders void, as against purchasers and creditors, mortgages not filed for registration; and the defendant, having parted with value before notice, was a purchaser as persons in that category are defined in *Dudley v. Abner.* If the purchaser has innocently and in good faith assumed such a position as that his deprivation of the property he has bought would leave him in a worse position than formerly, because of values he has delivered or new irrevocable obligations he has assumed, he is entitled to the protection the law accords bona fide purchasers for value and without notice.—35 Cys. pp. 351, 352; 24 Am. & Eng. Ency. of Law, p. 1171. If he buys, however innocently, on a credit, and gives only a nonnegotiable promise to pay, and before payment thereof receives notice of the adverse claim or of facts sufficient to put him on inquiry in the premises, he cannot invoke the protection the law accords bona fide purchasers; for his action in paying in such circumstances must be attributed to his own fault, and he has not been really prejudiced. —*Hoyt v. Turner, supra*; Jones on Chat. Mortg. § 313..

(6) In the absence of any indicia of fact or circumstance, then appearing, that tended to reflect upon the lawfulness of the possession of the animal by Gray, a condition the evidence does not disclose in respect

of the possession of the horse by Gray, the defendant. had the right to then rely and act upon the prima facie presumption of ownership resulting from that possession.—*Leigh v. M. & O. R. R. Co.,* 58 Ala. 165, 178; *Scaife v. Stovall,* 67 Ala. 241; Cyc. p. 1073.

(7-10)   The report of the appeal will contain plea 6. Its theory is to assert the defense of bona fide purchaser for value and without notice. The plaintiff's (appellant's) demurrer to the plea was overruled, thus establishing the plea's averments as bases for issues of fact upon or under which legal evidence was adducible. Aside from the asserted insufficiencies of the plea in respects not important in our view of the case, inquiries not at all necessary to be considered, it is clear, we think, that the concluding allegations of the plea sufficiently negative defendant's knowledge or notice of the existence of plaintiff's mortgage at the time defendant parted with value in his dealing with Gray in the purchase of the horse in suit, thereby efficiently incorporating that element of the defense of bona fide purchaser in the issues made by the plea. "The rule as to proof of bona fide purchase is that the party pleading it must first make satisfactory proof of purchase and payment.  *  *  *  This done, he need not go further, and prove he made such purchase and payment without notice. The burden here shifts, and if it be desired to avoid the effect of such purchase and payment, it must be met by counterproof that, before payment, the purchaser had actual or constructive notice of the equity or lien asserted, or of some fact or circumstance sufficient to put him on inquiry, which, if followed up, would doscover the equity or incumbrance."—*Hodges v. Winston,* 94 Ala. 576, 578, 10 South. 535, 536.

Here the evidence is conclusive that "purchase and payment" (not in full, for that is not required, as stated above in this opinion) was made by the defendant, of and for the horse in suit before the plaintiff's mortgage was filed for record on July 3, 1913. Thereupon the burden of proof shifted to the plaintiff to show notice within this rule just quoted. The plaintiff did nothing to meet or discharge this burden. There is no evidence, or inference from evidence, tending in any degree to show notice to defendant within the rule restated. Accordingly the defendant was entitled to the general affirmative charge; and, in consequence, errors, if any, otherwise intervening on the trial, were innocuous to the plaintiff.—*Beinville Water Co. v. Mobile,* 125 Ala. 178, 184, 27 South. 781; *Brammer v. Pettyjohn,* 154 Ala. 616, 618, 45 South. 656; *W. U. Tel. Co v. Whitson,* 145 Ala. 426, 41 South. 405.

The judgment must therefore be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.